**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
**JOSEPH A. FERRARA, SR., et al.,**

                            **Plaintiffs,**           **REPORT AND**
                                                  **RECOMMENDATION**
        **-against-**

                                                           **10-CV-5845 (RRM)**

**ALL-AROUND TRUCKING INC.,**

                            **Defendant.**
-------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

       This action was commenced on December 16, 2010, by Joseph Ferrara, Sr., Frank Finkel, Denise Richardson, Thomas Corbett, Anthony D'Aquila, Thomas Gesualdi, Louis Bisignano, Dominick Marrocco, and Anthony Pirozzi ("plaintiffs" or "trustees"), as trustees of the Local 282 International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training, and Vacation and Sick Leave Trust Funds (the "Funds"), a group of multiemployer employee benefit plans as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(3). Plaintiffs sued under ERISA, as amended, 29 U.S.C. §§ 1132(a)(3), 1145, to compel defendant All-Around Trucking Inc. ("defendant" or "All-Around Trucking") to submit to an audit and pay employer contributions it allegedly owes to the Funds. See Compl. (Dec. 16, 2010) ¶ 34, Electronic Case Filing ("ECF") Docket Entry ("D.E.") #1. Plaintiffs assert that defendant was a party to collective bargaining agreements that required defendant to submit to periodic audits and make specified contributions to the Funds. Compl. ¶¶ 9-13.

       Though properly served, defendant has not answered or otherwise appeared in the action and, on January 31, 2011, the Clerk of the Court noted defendant's default. See Clerk's

Entry of Default (Jan. 31, 2011) ("Entry of Default"), D.E. #8. On February 11th, the Honorable Roslynn R. Mauskopf referred plaintiffs' motion for a default judgment to the undersigned magistrate judge for a report and recommendation. See Order Referring Motion (Feb. 11, 2011). Thereafter, this Court ordered defendant to show cause by June 7, 2011, as to why a default judgment should not be entered. See Order to Show Cause (May 23, 2011), D.E. #15. Defendant has not responded to the order to show cause, and, on June 2, 2011, the copy of the Court's May 23, 2011 order addressed to defendant at its last known address was returned by Federal Express bearing notations suggesting that the recipient had moved or the business was closed. See Docket Entry (June 2, 2011), D.E. #16.

For the reasons that follow, this Court recommends that plaintiffs' motion for default judgment be granted and that plaintiffs be awarded judgment against defendant in the amount of $344,621.08 in damages, attorney's fees, and costs, plus prejudgment interest in an amount to be calculated by the Clerk of the Court according to the method described herein.

## BACKGROUND

Defendant executed a series of collective bargaining agreements ("CBAs"), entitled the Metropolitan Trucker's Association and Independent Trucker's Contracts, with Local 282, International Brotherhood of Teamsters ("Local 282"): a CBA operative from July 1, 2006, through June 30, 2009 (effective as to All-Around Trucking on April 1, 2009), and a modified agreement extending its term through June 30, 2012. See Metro. Trucker's Ass'n and Indep. Trucker's Contracts (undated) ("2006 CBA"), Decl. of Theresa Cody (Feb. 10, 2011) ("Cody Decl.") Ex. B, D.E. #12-3; Mem. of Agreement, 2009-2012 (Oct. 7, 2009) ("2009 CBA"), Cody Decl. Ex. C, D.E. #12-3. Those agreements incorporated the terms of a Trust

Agreement governing the Funds' relationship with employers. See 2006 CBA § 12(G); Restated Agreement and Decl. of Trust (July 1, 1999) ("Trust Agreement"), Cody Decl. Ex. A, D.E. #12-2. The terms of the Trust Agreement were extended as per the 2009 CBA. See 2009 CBA, at 1 ("The MTA Agreement shall contain the same terms and conditions of the collective bargaining agreement between Local 282 and the MTA that expires on June 30, 2009, except as modified by the terms of this memorandum of agreement.").

Plaintiffs have furnished the Court with remittance reports that defendant submitted to the Funds, covering a number of months up to and including December 2009; these signed reports state, above the signature line: "By signing this report you agree to accept the terms of the current Local 282 Industry Collective Bargaining Agreement covering the work performed by your employees." See Remittance Report Form (May 17, 2009), Cody Decl. Ex. D, D.E. #12-3. Three remittance reports filed with the Court -- for May, November, and December 2009 -- were signed but listed zero hours worked and thus zero balances due to the Funds. See Remittance Report Form (June 1, 2009), Cody Decl. Ex. D, D.E. #12-3; Remittance Report Form (Dec. 6, 2009), Cody Decl. Ex. D, #12-3; Remittance Report Form (Dec. 31, 2009), Cody Decl. Ex. D, D.E. #12-3. The proffered remittance reports, covering the months of July 2009 through December 2009, reflect payments at the rates set forth in the current applicable CBA; as demonstrated by the record, defendant actually paid the Funds at those rates. See generally Remittance Report Forms, Cody Decl. Ex. D, D.E. #12-3; 2006 CBA § 12; 2009 CBA, at 1.

Plaintiffs allege that defendant submitted no remittance reports and tendered no payments to the Funds for thirteen months, from January 2010 through January 2011. See

Cody Decl. ¶ 21. The Trust Agreement provides that, should an employer fail to submit a timely report, the Funds may compute the number of hours worked, and thus the amount due to the Funds, by taking the highest total hours of any of the employer's twelve previous reports and adding ten percent. See Trust Agreement, art. IX, § 1(e). Plaintiffs utilize this method in calculating the sum due for the thirteen applicable months. See Cody Decl. ¶¶ 23-27.

Plaintiffs filed the instant lawsuit on December 16, 2010, seeking an injunction compelling defendants to submit to an audit and to pay any actual or estimated delinquent contributions, statutory damages, interest, and attorney's fees. See Compl. at 9. Though properly served through the New York Secretary of State, see Summons (Jan. 5, 2011), D.E. #4, defendant failed to answer or otherwise appear in the action and, after the Clerk of the Court noted defendant's default, see Entry of Default, and plaintiffs moved for a default judgment, see Motion for Default Judgment (Feb. 11, 2011), D.E. #11, Judge Mauskopf referred the motion to the undersigned magistrate judge for a report and recommendation. See Order Referring Motion. This Court directed defendant to show cause by June 11, 2011, why plaintiffs' motion should not be granted. See Order to Show Cause. The order was sent via Federal Express to defendant, at the address provided by the New York Department of State, but was returned as undeliverable. See Docket Notation (June 2, 2011), D.E. #16.

## DISCUSSION

Entry of a default judgment is appropriate provided the pleading properly states a claim upon which relief can be granted. See, e.g., Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Axiom Plumbing & Heating Corp., No. 08-CV-116 (FB)(JMA), 2009 WL 234348, at *1 (E.D.N.Y. Jan. 30, 2009). "A defendant's default is an admission of all

well-pleaded allegations in the complaint except those relating to damages." Id. (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)). The fact that a complaint stands unanswered is not sufficient to establish liability on its claims: a default is not a concession of "conclusory allegations, nor does it excuse any defects in the plaintiff's pleading." Liberty Mut. Ins. Co. v. Luxury Transp. Mgmt. Inc., No. CV 07-0608(RJD)(JO), 2009 WL 1033177, at *6 (Apr. 16, 2009). A defendant's default does no more than concede the complaint's factual allegations as to liability; "it remains the plaintiff's burden to establish that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." Liberty Mut. Ins. Co. v. Fast Lane Car Serv., Inc., 681 F.Supp.2d 340, 346 (E.D.N.Y. 2010); see also Greyhound, 973 F.2d at 159 (allegations supporting liability must be "properly alleged"); Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 69 (2d Cir. 1971) (default-based liability is established by "well-pleaded allegations in a complaint"), rev'd on other grounds, 409 U.S. 363 (1973); Directv, Inc. v. Neznak, 371 F.Supp.2d 130, 132-33 (D. Conn. 2005) (denying default judgment on several claims that were based only on conclusory allegations lacking a sufficient factual basis for a finding of liability). If the allegations in the complaint properly state a claim, the plaintiff must then establish damages. See Greyhound, 973 F.2d at 158.

**I.     LIABILITY**

The Court first reviews plaintiffs' first and only cause of action in order to assess whether the uncontroverted allegations in the complaint are sufficient to establish defendant's liability.

The Complaint in this case contains a well-pleaded ERISA claim. Section 1145 of

ERISA requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement . . . [to] make such contributions in accordance with the terms and conditions of such plan or such agreement." See 29 U.S.C. § 1145; see also, e.g., Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc., No. 08-CV-4563 (FB)(SMG), 2010 WL 827901, at *2 (E.D.N.Y. Mar. 4, 2010). ERISA provides federal jurisdiction over claims brought to enforce an employer's obligation to make the required contributions. See 29 U.S.C. § 1132(f).

The First Claim for Relief states that, pursuant to the CBAs, defendant was required to "make contributions to the Funds on behalf of [its] covered employees," see Compl. ¶ 10, and, as set forth in the Trust Agreement, defendant was bound to submit periodic remittances and to undergo audits upon the request of the Trustees. See id. ¶¶ 12-13. Specifically, defendant was required "to submit to audit in order to verify that all contributions required under the CBAs [had] been remitted to the Funds, that such contributions [had] been made solely on behalf of individuals eligible to participate in the Funds and that covered employees [received] the required benefits and/or credits." See id. ¶ 16. Under the Trust Agreement, employers who fail "to submit remittance reports and/or pertinent books and records" within 20 days of a request owe greater monthly contributions. See id. ¶ 18. Furthermore, the Trust Agreement provides that the failure of an employer to submit to an audit request -- even in the event of timely submitted remittance reports -- exposes itself to an additional monthly contribution. See id. ¶ 19. Moreover, in the event that an audit reveals a delinquency in contributions, the employer must also "pay interest on monies due, liquidated damages, attorney's fees, audit

fees, filing fees, and costs." See id. ¶ 20.

In their Complaint, plaintiffs allege that the Funds' auditors, through letters sent on July 8, 2010, and July 23, 2010, requested that defendant submit to an audit for the period of April 1, 2009, through June 30, 2010. See id. ¶ 21. Additionally, in a July 29, 2010 letter, the Funds' counsel requested that defendant provide information necessary to locate the books and records required to conduct an audit. See id. ¶ 22. Plaintiffs allege that defendant failed to submit to such an audit, failed to provide the requested information, and failed to pay amounts that would be owed as a result of the audit (or an estimated audit). See id. ¶ 23. Therefore, the Complaint adequately alleges that defendant violated Section 1145 of ERISA by failing to make contributions required under the Trust Agreement, and, as such, is liable under Section 1132(a)(3) and subject to remedies under Section 1132(g). See Compl. ¶ 34. The Court respectfully recommends that defendant be held liable for damages caused by that violation, in an amount addressed later in this opinion.

## II. DAMAGES

The Court must next consider the appropriate measure of damages to award plaintiffs. Although a defendant, by defaulting, admits all well-pleaded allegations pertaining to liability, a plaintiff must provide evidence to substantiate its request for damages; it is within the Court's discretion to determine whether that burden has been met. See, e.g., Greyhound, 973 F.2d at 158.

ERISA provides that, upon a finding that an employer violated Section 1145, the plan is entitled to judgment in the amount of the delinquent contributions, as well as interest, liquidated damages, reasonable attorney's fees, and costs. See 29 U.S.C. § 1132(g)(2).

"Section 1145 makes clear that a plan member's contractual duty to make contributions to multiple employer plans is a statutory requirement, and violations of § 1145 are enforceable through civil actions brought under § 1132(g)." Labarbera v. Andrew's Trucking Corp., No. 06 CV 6243 (NG)(JMA), 2007 WL 4224631, at *3 (E.D.N.Y. Nov. 26, 2007). "Simply put, benefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations." Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2d Cir. 1990) (citation omitted).

A. **Estimated Delinquent Contributions**

By its default, defendant has admitted its failure to remit contributions on behalf of employees covered by the CBA. Pursuant to the Trust Agreement, when an employer fails to submit to an audit, the Funds' Trustees may estimate the contributions due.[1] Cody Decl. ¶ 15; Trust Agreement, art. IX §§ 1(e)-(f); Ferrara v. Stallone Testing Labs., Inc., No. 10 CV 901 (ENV), 2011 WL 3847123, at *6 (E.D.N.Y. Aug. 5, 2011), adopted by 2011 WL 3847406 (E.D.N.Y. Aug. 30, 2011). Declarant Cody calculated the estimated contributions using formulae set forth in the Trust Agreement. Cody Decl. ¶¶ 24-25. For periods during which defendant submitted remittance reports, Cody took "50% of the number of hours reported by All-Around to the Funds for each of those months, and multipl[ied] that number by the current

---

[1] For the first time in this action, Cody's declaration asserts that defendant was required to post a surety bond and, having failed to do so, was bound to submit weekly (as opposed to monthly) contributions. See Cody Decl. ¶¶ 10-11; 2006 CBA § 13(A). However, Cody's calculations are based entirely on monthly figures. See generally Cody Decl. In fact, the Trust Agreement itself only alludes to monthly calculations of damages. See Trust Agreement, art. IX; Compl. ¶ 19; Cody Decl. ¶¶ 16-17. Furthermore, plaintiffs fail to explain, and the supporting exhibits fail to outline, how the weekly contribution requirement would affect their calculations. See Trust Agreement, art. IX. For these reasons, the damages analysis below will be based on the proffered monthly figures.

contribution rate." Cody Decl. ¶¶ 16, 24; Trust Agreement, art. IX § 1(f). For those months during which defendant failed to submit a remittance report, Cody "add[ed] 10% to the number of hours for the month in which the greatest number of hours were reported in the previous twelve remittance reports," and multiplied that number by the relevant contribution rate under the CBA. Cody Decl. ¶ 17; Trust Agreement, art. IX § 1(e). Cody used June 2009, a month for which defendant reported 600 hours, as the base month. See Cody Decl. ¶ 26. Applying the relevant contribution rates, plaintiffs claim a principal balance of $283,615.52 for the period of April 2009 through January 2011.[2] See Cody Decl. ¶¶ 26-27; Audit Report, Cody Decl. Exs. E & F, D.E. #12-3. Having run its own calculations based on these numbers, this Court has reached the same result. Therefore, the Court respectfully recommends that plaintiffs be awarded $283,615.52 in unpaid contributions.

### B. Prejudgment Interest

In any action to enforce Section 1145 of ERISA, "the court shall award . . . interest on unpaid contributions . . . determined by using the rate provided under the plan," when the plan

---

[2] Plaintiffs claim unpaid contributions for a period extending beyond the date on which this action was filed; namely, contributions owed to the Funds from December 16, 2010, through January 31, 2011 (the date on which default was entered). See Cody Decl. ¶ 23; Entry of Default. Although, as a general matter, Rule 54(c) of the Federal Rules of Civil Procedure limits damages in the case of default to the relief prayed in the complaint, courts may award damages "that accrued during the pendency of the litigation if the complaint put defendant on notice that plaintiff might seek such damages." See Finkel v. Triple A Grp., Inc., 708 F.Supp.2d 277, 282 (E.D.N.Y. 2010) (citations omitted). Here, the Complaint seeks unpaid contributions owed "for the period from April 1, 2009 through the date of the audit." Compl. at 9. This language is sufficient to put defendant on notice that plaintiffs might seek damages accruing after the onset of the litigation, since the requested audit necessarily would occur after the filing of the Complaint. Moreover, as of February 11, 2011, the date on which plaintiffs filed the instant motion, defendant had not submitted to an audit. See Cody Decl. ¶ 14. Therefore, the Court respectfully recommends that plaintiffs be awarded damages on unpaid contributions through January 31, 2011.

provides such a rate. 29 U.S.C. § 1132(g)(2). Here, the plan provided for an interest rate of 1.5 percent per month, or 18 percent per year. See Amendment to the Trust Agreement (May 24, 2005), Cody Decl. Ex. A, D.E. #12-2. Plaintiffs seek interest on the unpaid contributions for the period encompassing April 1, 2009, through January 31, 2011; they calculate the interest from May 1, 2009, the date on which they claim those contributions became due. See Cody Decl. ¶¶ 34-36. To calculate the interest due, Cody "(1) [took] eighteen percent of the estimated monthly contributions due the Funds from April 1, 2009 through January 31, 2011, (2) divid[ed] those numbers by 365 days to determine the daily interest rates, and (3) multipli[ed] the daily interest rates by the number of days between the first day of the month in which the contributions were due, and February 3, 2011." Cody Decl. ¶ 35. The Court generally adopts plaintiffs' proffered method, but recommends a simplified means of interest computation with respect to step three.

Because ERISA is silent regarding the accrual date of prejudgment interest, courts in this District have adopted a simplified method of interest calculation, as set forth in New York statutory law. See, e.g., Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665(NG)(RLM), 2007 WL 3124612, at *11 (E.D.N.Y. Oct. 23, 2007) (citing N.Y. C.P.L.R. § 5001(b); Trustees of the Nat'l Org. of Indus. Trade Unions v. Davis Grande Co., No. 03-CV-6229 (NG)(SMG), 2006 WL 1652642, at *3 (E.D.N.Y. June 9, 2006)). Under this method, prejudgment interest accrues "from a 'single reasonable intermediate date' when damages are incurred over a period of time." See Triple A Grp., 708 F.Supp.2d at 287 (citing N.Y. C.P.L.R. § 5001(b)). In this case, May 1, 2010, represents a reasonable midpoint, and this Court will adopt that date as the accrual date.

Therefore, plaintiffs are entitled to interest on unpaid contributions for the period of April 1, 2009, through January 31, 2011, accruing as of May 1, 2010, through the date judgment is entered. See, e.g., Laundry, Dry Cleaning Workers & Allied Indus. Health Fund, Unite Here! v. Jung Sun Laundry Grp. Corp., No. 08-CV-2771 (DLI)(RLM), 2009 WL 704723, at *6 (E.D.N.Y. Mar. 16, 2009) (calculating plaintiffs' prejudgment interest through the date of entry of final judgment). The Court respectfully recommends that plaintiffs be awarded prejudgment interest in an amount calculated by the Clerk of Court, based on a 1.5 percent monthly interest rate and a $283,615.52 principal balance, from May 1, 2010, through the date judgment is entered.

### C. Liquidated Damages

ERISA allows for liquidated damages for unpaid contributions. Liquidated damages are available in the greater of either the interest on the unpaid contributions or as provided for under the plan, in an amount not in excess of 20 percent of the unpaid contributions. See 29 U.S.C. § 1132(g)(2). Here, the Trust Agreement, art. IX, § 3(d)(2), provides for liquidated damages equal to 20 percent of the delinquent contributions. Plaintiffs request liquidated damages on the unpaid contributions for the period from April 1, 2009, through January 31, 2011, and seek 20 percent of the $283,615.52 unpaid principal, or $56,723.10. Cody Decl. ¶ 37. The Court respectfully recommends that plaintiffs be awarded $56,723.10 in liquidated damages.

### D. Attorney's Fees and Costs

ERISA provides that when an employee benefit fund prevails in a legal action, the defendant is liable for reasonable attorney's fees and costs. See 29 U.S.C. § 1132(g)(2)(D);

see also Trust Agreement, art. IX § 3(a) (providing that the Funds may recover attorney's fees in an action to recover delinquent contributions). Plaintiffs state that they have incurred fees and expenses totaling $3,932.46. See Decl. of Michael S. Adler (Feb. 10, 2011) ("Adler Decl.") ¶ 7, D.E. #13.

"In determining the sum due to plaintiffs' attorneys in fees and costs, the Court looks to what a reasonable client would be willing to pay to determine the 'presumptively reasonable fee.'" Masino v. Columbus Constr. Corp., No. 08-CV-1592 (RRM)(CLP), 2009 WL 2566956, at *6 (E.D.N.Y. Aug. 19, 2009) (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008)). "To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed[,]" using factors such as the labor and skill required, the difficulty of the legal questions, the attorney's customary hourly rate, the amount at stake, and awards in similar cases. Id. (quoting Arbor Hill, 522 F.3d at 186 n.3 (listing twelve factors)). Furthermore, under the forum rule, courts should use the hourly rates charged in the district in which the reviewing court sits when assessing its reasonableness. See Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174-76 (2d Cir. 2009) (internal citations and quotations omitted).

### 1. Attorney and Paralegal Hourly Rates

Plaintiffs have detailed the billing rates used to determine their $3,368.50 fee request: $370 per hour for Elizabeth O'Leary, a partner admitted in 1997, $275 for associate Michael Adler, an associate attorney admitted in 2003, and $90 per hour for three paralegals. Adler Decl. ¶¶ 7, 9-12. The Court concludes that for ERISA cases in this District, the requested rates, while high, are within the range of reasonable rates. See Stallone Testing, 2011 WL

3847123, at *10 (approving as reasonable rates of $370 per hour for a partner, $275 per hour for a senior associate, and $90 per hour for a paralegal); Ferrara v. Cab II Enters., Inc., No. 09-CV-1331 (SLT), 2011 WL 1321983, at *6 (E.D.N.Y. Feb. 24, 2011) (approving identical hourly rates as "at the high end, but within the range of rates approved in cases of this type within this district"); Finkel v. Architcraft Inc., No. 08-CV-4597 (NGG)(JMA), 2010 WL 1257773, at *4 (E.D.N.Y. Feb. 24, 2010), adopted by 2010 WL 1212556 (E.D.N.Y. Mar. 26, 2010) (approving identical rates). Therefore, the Court approves plaintiffs' attorneys' hourly rates.

### 2. Hours Worked

Plaintiffs' counsel has provided itemized time records in support of the application for attorney's fees. See Attorney Bills (Feb. 10, 2011) ("Bills"), Adler Decl. Ex. C, D.E. #13. Plaintiffs seek to recover for 14.7 hours of attorney and paralegal time at the above-mentioned rates. See Bills. Specifically, plaintiffs claim one half-hour of work for partner Elizabeth O'Leary, 10.3 hours of work for associate Michael Adler, and a combined 3.9 hours of paralegal work. Adler Decl. ¶ 10. Courts in this District readily approve comparable hourly totals in ERISA default cases. See, e.g., Gesualdi v. Giacomelli Tile Inc., No. CV10-4841 (ADS)(WDW), 2011 WL 4352548, at *4 (E.D.N.Y. Aug. 18, 2011), adopted by 2011 WL 4356157 (E.D.N.Y. Sept. 16, 2011) (approving as reasonable 14.6 hours of work); Ferrara v. Corona & Son Trucking, Inc., No. 09CV5352 (SLT)(ALC), 2010 WL 5490918 (E.D.N.Y. Oct. 27, 2010), adopted by 2011 WL 63607 (E.D.N.Y. Jan 6, 2011) (approving as reasonable 14.9 hours of work). Furthermore, the tasks were appropriately apportioned between the partners, associates, and paralegals. Given the nature of the work performed and the efficient

delegation of tasks, the overall hours in this case are well within the reasonable range.
Therefore, the Court respectfully recommends that plaintiffs be awarded $3,368.50 in attorney's fees.

### 3. Attorney Costs

Plaintiffs also seek to recover costs totaling $563.96. See Adler Decl. ¶ 13. Specifically, plaintiffs claim a court filing fee of $350.00, service of process costs of $175.50, and $38.46 to cover postage, photocopies, and ground transportation. See id.; Invoice (Jan. 10, 2011), Adler Decl. Ex. D, D.E. #13. These costs are plainly reasonable, and therefore the Court respectfully recommends recovery of the full $563.96.

### 4. Audit Costs

Finally, plaintiffs seek audit costs of $350. Under the Trust Agreement, an employer is required to pay audit costs of $350 or any other amount that the Trustees shall apply. See Cody Decl. ¶ 38; see also Trust Agreement art. IX, § 3(b). Here, plaintiffs seek $350 in audit fees for their audit request. Other courts in this District have awarded such fees in cases involving similar provisions. See Stallone Testing, 2011 WL 3847123, at *8-9 (collecting cases). Accordingly, this Court respectfully recommends that plaintiffs be awarded $350 in audit fees.

## CONCLUSION

For the foregoing reasons, this Court recommends that plaintiffs be awarded judgment against defendant in the sum of $344,621.08 in damages, attorney's fees and costs, plus prejudgment interest on $283,615.52, to be calculated by the Clerk of Court in accordance with the method herein described.

Any objections to the recommendations contained herein must be filed with Judge Mauskopf on or before November 25, 2011. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

The Clerk is directed to enter this Report and Recommendation into the ECF system and to transmit copies by Federal Express to All-Around Trucking Inc. at the following address:

> Phyllis Cirillo
> All-Around Trucking Inc,
> 152 McLean Avenue,
> Staten Island, New York 10305

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**November 8, 2011**

              **ROANNE L. MANN**
              **UNITED STATES MAGISTRATE JUDGE**